UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ASHLEY E. ALDEN,                    )
                                    )
        Plaintiff                   )
                                    )   1:10-cv-00316-GZS
                                    )
OFFICE FURNITURE DISTRIBUTORS       )
OF NEW ENGLAND, INC.,               )
                                    )
        Defendant                   )

## RECOMMENDED DECISION

Ashley Alden has sued her former employer, Office Furniture Distributors of New England, Inc., alleging breach of contract, violation of 10 M.R.S. § 1342 (pertaining to sales representatives contracts), and defamation.   Office Furniture Distributors has moved for summary judgment (Doc. No. 27) on all three counts.  The Court referred the motion for report and recommendation pursuant to 28 U.S.C. § 636.  I now recommend that the Court grant the motion, in part.

### SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). By local rule, summary judgment facts are introduced by means of "a separate, short, and concise statement of material facts," which statements must be supported by record citations. D. Me. Loc. R. 56(b), (c). The Court's review of the record is guided by the moving party's statement, the non-moving party's opposing statement, including any additional statement, and the moving party's limited reply statement. D. Me. Loc. R. 56(b), (c), (d); see also Toomey v. Unum Life Ins. Co., 324 F. Supp. 2d 220, 221 n.1 (D. Me. 2004) (explaining "the spirit and purpose" of Local Rule 56). Appropriate record sources include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

Because many factual disputes depend on circumstantial evidence, to determine whether a fact is established, circumferentially, the Court will draw all reasonable inferences in favor of the non-movant that can be supported by the record sources she cites. However, where the non-movant bears the burden of proof, she still must present "definite, competent evidence" from which a reasonable person could find in her favor. United States v. Union Bank for Sav. & Inv. (Jordan), 487 F.3d 8, 17 (1st Cir. 2007). If the Court's guided review of the record reveals evidence sufficient to support a judgment in favor of the non-moving party on one or more of her claims, then there is a trial-worthy controversy and summary judgment must be denied to the extent there are supported claims. Unsupported claims are properly dismissed. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

## MATERIAL FACTS

The summary judgment issues are (A) whether Office Furniture Distributors owes Alden

unpaid commissions;  (B) whether Office Furniture Distributors maintains a fixed office in

Maine;  and (C) whether Office Furniture Distributors defamed Alden.

## A.    Commissions

Ashley Alden's employment was governed by a sales employee agreement dated

September 1, 2009, naming Office Furniture Distributors of New England as employer and

Ashley Alden as employee.  (Def.'s Statement ¶ 10.)  The employment agreement stated that

Office Furniture Distributors would pay "a thirty (30%) percent commission on all office supply

and office furniture sales made by Employee."  (Id. ¶ 10)  Office Furniture Distributors

terminated Alden's employment on March 8, 2010.  (Id. ¶ 15.)  Alden worked roughly six

months for Office Furniture Distributors and over that period her cumulative commissions on

sales, as calculated by Office Furniture Distributors, fell short of her cumulative weekly draw.[1]

Alden has not identified any evidence that she objected, during the course of her employment, to

the manner of commission calculation, or that she demanded more pay than she received.  (Id. ¶¶

20-22;  Mee Decl. Ex. 7, Doc. No. 28-10.)

Office Furniture Distributors explains that it calculated sales commissions based on net

proceeds or what Office Furniture Distributors refers to as "gross profit" for each transaction.

(Def.'s Statement ¶¶ 23, 25;  Tortorella Decl. ¶ 13, Doc. No. 28-2;  Danizio Dec. ¶ 15, Doc. No.

28-1.)  Office Furniture Distributors states that it is widely known that salespersons in this trade

---

[1]     Alden's base pay consisted of a weekly "draw" of $500.  Commissions could enhance this payment if they exceeded the draw:

> Employer shall pay Employee a thirty (30%) percent commission on all office supply and office furniture sales made by Employee.  The commissions payable under this Section 5(c) shall be credited first against the cumulative amount of Draws paid to Employee and not previously credited against under this sentence.

(Sales Employment Agreement § 5(c), Mee Decl. Ex. 1, Doc. No. 28-4.)

are paid commissions based on the "gross profit or net sale" rather than "the gross sale." (Def.'s Statement ¶ 23.) Alden responds simply that she does not have knowledge to respond to this assertion. She fails to introduce any contrary evidence, such as evidence that Office Furniture Distributors paid commissions to any of its associates based on sales price rather than the gross profit margin. Office Furniture Distributors has filed commission reports indicating that Alden's sales activity did not even generate a 30% gross profit for the company. (Mee Decl. Ex. 7, Doc. No. 28-10.) Alden has introduced this report as well. (Languet Aff. Ex. 17, Doc. No. 30-20.) Although Office Furniture Distributors's representations concerning costs are not backed by any documents, Alden does not appear to have conducted any discovery into how Office Furniture Distributors calculated its costs for sales Alden participated in.

In addition to the issue of how Office Furniture Distributors calculated Alden's commissions, there is an issue whether the invoiced commission list for Alden's sales activity captures all of Alden's sales. (See Languet Aff. Ex. 17, Doc. No. 30-20.) Alden issued a few quotes to customers prior to her termination that were not finalized as of her termination. (Def.'s Statement ¶ 28.) For each customer, Office Furniture Distributors has provided a reason why the sale was not credited to Alden. Alden's responsive statement is also noted.

*Waltz Pharmacy*—a January 2010 quote that Alden did not finalize and a future sale that Anne Tortorella handled roughly one year after Alden's termination. (Id. ¶ 30.) Alden denies this statement but fails to cite any record evidence that she is entitled to a commission for this sale.

*On Target*—an October 2009 quote that Alden did not finalize and a future sale that Tortorella and another salesperson facilitated without Alden's involvement. (Id. ¶ 31.) Alden

denies this statement and cites a March 31, 2010, invoice for roughly $6500 (not including tax) that identifies her as the salesperson.  (Languet Aff. Ex. 18, Doc. No. 30-21.)

*Cedar Works*—a March 5, 2010, invoice and an assertion that Alden's involvement was ancillary and resulted in an incorrect order.  (Def.'s Statement ¶ 32.)  Alden offers a qualification and a denial, but no record citation.  However, in paragraph 21 of her additional statement, Alden cites a March 5, 2010, invoice identifying her as salesperson and a sale of approximately $4500. (Languet Aff. Ex. 15, Doc. No. 30-18.)

*Verso Paper*—a January 11, 2010, quote that Alden did not finalize and that Tortorella finalized after sending additional quotes.  (Def.'s Statement ¶ 33.)  Alden denies this statement and cites a commission list that gives her credit for prior and subsequent sales to Verso Paper, presumably to counter Tortorella's affidavit statement that Alden only participated in the Verso Paper account by Tortorella's invitation.  (Languet Aff. Ex. 17, Doc. No. 30-20.)  The record cited by the parties does not divulge the particulars of any resulting invoice.

*Dead River*—A January 27, 2010, quote that Alden did not finalize.  According to Office Furniture Distributors, it has not made a sale to Dead River in over two years.  (Def.'s Statement ¶ 35.)  Alden denies this and cites an April 1, 2009, invoice for under $200 (not including tax), an April 30, 2009, invoice for roughly $350, an August 27, 2009, invoice for roughly $380, and a January 15, 2010, invoice for roughly $400.  (Languet Aff. Ex. 13, Doc. No. 30-16.)  Alden also includes July and August 2010 invoices identifying Tortorella as the salesperson.  The Tortorella invoices appear to relate to a single sale for approximately $1,000.  (Id.)  The record does not indicate whether Alden ever received credit for the April 2009 sales, which predated her employment with Office Furniture Distributors.  The absence of evidence does not help Alden, as she bears the burden of proof.  The record also offers no explanation for why Alden would be

entitled to credit for Tortorella's sales in July and August 2010. This leaves only the August 27, 2009, invoice and the January 15, 2010, invoice. The record reflects a credit for the January 15, 2010, sale. There is no credit on the commission list for the August 27 sale. At best, Alden is owed a commission credit for this $380 sale.

*Fabian Oil*—a January 28, 2010, quote that came to involve an incorrect product order and added costs. (Def.'s Statement ¶ 36.) Alden denies this statement but offers no record citation for her denial.

*Lincoln Health Access*—Alden has submitted the final page of a multi-page, $70,000 quote of February 2009, which she issued to this potential customer. However, she offers no evidence that the sale was ever consummated. (Pl.'s Add'l Statement ¶ 22, citing Languet Aff. Ex. 16, Doc. No. 30-19.)

Based on the parties' statements, it appears that, at most, a fact question exists concerning the payment or credit of a commission on roughly $11,380 in sales. Alden has not offered a statement concerning how that commission would be calculated.[2] Instead, she has argued in her memorandum that she should have been paid 30% of the sales price for all of her sales, which would result in an obvious discrepancy between what she was due and what she was paid. However, if that theory of the case does not pan out for her, Alden has failed to offer the Court any statement or record citation that would enable the Court to find that the pay Alden received from Office Furniture Distributors fell short of a commission calculated based on 30% of sales profit. In other words, the only way that the Court could reasonably infer the existence of a

---

[2]      Judging from the invoiced commission list, a commission for this level of gross sales might be as low as $600 or as high as $800, depending on the costs of the sales and assuming that commissions are to be based on gross profit. If the Court used $800 as the measure, that would push Alden's total commission credit just over $7,000, relying on the invoiced commission list (Doc. No. 30-20). Office Furniture Distributors has introduced a "commission recap" report (Doc. No. 28-10), which suggests that this level of additional commission credit would not result in a commission computation in excess of Alden's cumulative weekly draw, unless this court used her sales price method of computation. The commission recap report also shows that the company's gross profit was consistently less than 30 % for Alden's sales.

commission calculation in excess of Alden's cumulative weekly draws would be if the Court

accepted that Alden's commissions were 30% of sales price rather than 30% of sales profit.

**B.     Fixed Office**

Defendant Office Furniture Distributors of New England is a Massachusetts corporation.

(Pl.'s Add'l Statement ¶ 1;  Def.'s Reply Statement ¶ 1.)  While Alden worked for Office

Furniture Distributors she "reported" to work at 257 Water Street, Augusta, Maine.  Though

Alden did not have her own office space or desk at that location, others in the organization did.

(Def.'s Statement ¶ 11;  Alden Dep. at 19, Doc. No. 28-12.)  Outside the building is a sign

bearing the name "Transco Union Office."  (Def.'s Statement ¶ 11.)  This sign alludes to a

business incorporated under the name "Transco Union Office Solutions," a business entity

established by Anne Tortorella and acquired from her (allegedly by Office Furniture

Distributors) in September 2009.  (Id. ¶¶ 4, 6.)  Office Furniture Distributors explains that it

operates under the Transco Union Office name in Maine.  (Id. ¶ 8.)

Prior to working for Office Furniture Distributors, Alden was hired by Anne Tortorella to

work for Transco Union Office Solutions beginning in 2008.  Alden's employment with Office

Furniture Distributors began in 2009 upon Tortorella's sale or transfer of Transco Union Office

Solutions to Office Furniture Distributors or its principal(s).  (Id. ¶ 10;  Alden Aff. ¶ 2, Doc. No.

30-3.)

Although Alden's W-2 form identified Office Furniture Distributors as her employer, the

pay stubs associated with Alden's compensation named her employer as Union Office Interiors.

(Def.'s Statement ¶¶ 12, 13.)  "Union Office" is the name employees often use when referring to

Office Furniture Distributors.  (Id. ¶ 3.)  It is also a name used by Office Furniture Distributors in

connection with its Maine operations.  (Id. ¶ 8.)  Alden concedes that "Union Office may very

well have an office at the stated location," but she denies that Office Furniture Distributors does. (Pl.'s Opposing Statement ¶ 8.) Although Office Furniture Distributors asserts that it maintains the Augusta office space, transacts business from that location through its Transco Union Office, and employs the sales force at that location, Office Furniture Distributors has never obtained a license in its own name to transact business in the State of Maine.[3] (Pl.'s Add'l Statement ¶ 3.)

On February 3, 2010, roughly a month before Alden's termination, Alden entered into an understanding with Anne Tortorella and Dave Morosas, which understanding was that Alden would take over the "Maine General" account formerly held by Ms. Tortorella. The understanding was memorialized in a letter of understanding, which letter both parties have filed in support of their summary judgment positions. The letter identifies Tortorella as vice president of sales for Maine and Mr. Morosas as vice president of sales for "Union Office Interiors." The last line of the letter reads: "Union Office recognizes and appreciates your efforts and contributions to our mutual well being and looks forward to your continued success." The signature line for Mr. Morosas reads: "VP Sales, Union Office." (See Mee Decl. Ex. 3, Doc. No. 28-6; Languet Aff. Ex. 2, Doc. No. 30-5.) Alden's own statement of additional material facts states that her employment agreement required her to report to Mr. Morosas (Pl.'s Add'l Statement ¶¶ 14-15), yet she denies working for "Union Office." (Pl.'s Opposing Statement ¶ 10.) When Tortorella informed Alden that she was being fired, the meeting took place at the Water Street office. (Def.'s Statement ¶ 15.) Alden denies this, but fails to cite any evidence to support the denial.

---

[3] Alden asserts that Office Furniture Distributors of New England, Inc., has never filed an application for authority to transact business in Maine and is not authorized to transact business in Maine under 13 M.R.S. § 13. (Pl.'s Add'l Statement ¶ 3.) Office Furniture Distributors says this fact is irrelevant, but it does not deny the statement.

**C.    Defamatory Speech**

Sometime subsequent to the letter of understanding related to the Maine General account, Anne Tortorella reported to Dave Morosas that Alden was not working effectively in pursuing sales and that Alden had misrepresented her whereabouts on occasion.  (Id. ¶ 18.)  Office Furniture Distributors asserts that Tortorella's report was true, citing Alden's deposition testimony, but Alden's testimony does not support the statement.  (Def.'s Statement ¶ 39, citing Alden Dep. at 84-85.)  Alden swears she never misrepresented her whereabouts.  (Pl.'s Opposing Statement ¶ 39, citing Alden Aff. ¶ 42.)  Alden also offers a qualification, stating that she was "not under the supervision of Anne Tortorella" at the time, but the import of this qualification is not clear as Alden admits that it was Tortorella who fired her.  (Pl.'s Opposing Statement ¶ 18.)

In addition to the communications between Tortorella and Morosas, Tortorella reported to the Maine Department of Labor, Bureau of Employment Security, that Alden was fired because she was "caught lying."[4]  (Pl.'s Add'l Statement ¶18.)  Office Furniture Distributors notes that such a report is absolutely privileged under Maine's Employment Security Law, 26 M.R.S. § 1047.

DISCUSSION

Office Furniture Distributors argues that it is entitled to summary judgment against all three of Alden's claims because (A) Alden cannot prove that Office Furniture Distributors failed to pay commissions due to Alden;   (B) Office Furniture Distributors has a fixed and permanent place of business in Maine and, therefore, is not subject to liability under 10 M.R.S. §§ 1341 *et seq.*;  and (C) Tortorella's defamatory statements to Morosas were true, were not negligent, and were protected by a conditional privilege.  (Summary J. Mem., Doc. No. 27-1.)  Based on my

---

[4]    Evidently, Tortorella supplied a report to the Bureau because Alden's qualification for unemployment benefits depended, in part, on time she spent working for Tortorella when Tortorella owned Transco Union Office Solutions.  (See Opp'n Mem. at 10-11.)

analysis of the law and the record, I find that Alden's contract theory fails as a matter of law and that this failure calls for summary judgment in favor of Office Furniture Distributors on the first two counts of the complaint. As for the third count, alleging defamation, Alden has generated a genuine issue of material fact for trial.

A.      **Count I:  Breach of Contract**

The parties' contract is subject to Massachusetts law. (Sales Employee Agreement § 12.6, Mee Decl. Ex. 1, Doc. No. 28-4.) "The long-settled rule for breach of contract recovery is that a wronged party is entitled to receive the benefit of the bargain, that is, be placed in the same position as if the contract had been fully performed." Fecteau Benefits Grp., Inc. v. Knox, 890 N.E.2d 138, 144, 72 Mass. App. Ct. 204, 209 (2008) (internal quotation marks omitted). Alden alleges that she has been denied the benefit of her bargain because she is entitled to unpaid commissions if the sales employment agreement is understood to promise her a 30% commission based on sales *price*. (Compl. ¶¶ 22-25, 33.)[5] Office Furniture Distributors argues that it is entitled to summary judgment because the contract and the parties' course of dealing demonstrate that the commission is based on "net sales" rather than "gross sales." (Summary J. Mem. at 3-5.)

The interpretation of contract language and the question of whether that language is ambiguous present questions of law for the Court's resolution. Eigerman v. Putnam Invs., Inc., 877 N.E.2d 1258, 1263, 450 Mass. 281, 287 (2007). "Contract language is ambiguous where 'an agreement's terms are inconsistent on their face or where the phraseology can support reasonable

---

[5]       In her complaint, Alden has claimed a right to employee benefits, including 401k payments. There is no indication in the parties' summary judgment filings what happened to this basis for contract relief. Office Furniture Distributors clearly states in its motion that it seeks judgment against the contract claim based on Alden's inability to demonstrate breach or damages. (Def.'s Mot. for Summ. J. at 1, Doc. No. 27.) Alden appears to have abandoned this portion of her contract claim because she failed to mention it in her opposition memorandum or introduce the factual basis for it in her opposition statement.

difference of opinion as to the meaning of the words employed and obligations undertaken.'"
Post v. Belmont Country Club, 805 N.E.2d 63, 70, 60 Mass. App. Ct. 645, 652 (2004) (quoting
Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1083 (1st Cir. 1989)). "However, an
ambiguity is not created simply because a controversy exists between parties, each favoring an
interpretation contrary to the other's." Jefferson Ins. Co. of N.Y. v. Holyoke, 503 N.E.2d 474,
476, 23 Mass. App. Ct. 472, 475 (1987).

If a contract term is ambiguous, the parties' purpose and understanding may be proved
through extrinsic evidence. Colorio v. Marx, 892 N.E.2d 356, 361, 72 Mass. App. Ct. 382, 387
(2008). In order to generate a factual question for trial, the plaintiff must advance a "fair
reading" of the contract language that would support a recovery. Id., 892 N.E.2d at 362, 72
Mass. App. Ct. at 388-89. This has been described as an interpretation that a reasonably
intelligent person could accept as the parties' mutual purpose. Fecteau Benefits Grp., 890
N.E.2d at 144, 72 Mass. App. Ct. at 211. "Common sense is as much a part of contract
interpretation as is the dictionary or the arsenal of canons." Fishman v. LaSalle Natl. Bank, 247
F.3d 300, 302 (1st Cir. 2001) (applying Massachusetts law and affirming entry of summary
judgment against a plaintiff's "literal" contract reading). "The presumption in commercial
contracts is that the parties were trying to accomplish something rational." Id.

Ashley Alden contends that the contract's promise of a 30% commission on sales is clear
on its face. (Opp'n Mem. at 3, Doc. No. 30-2.) She offers that a commission on sales
necessarily means a commission based on sales "price" because a sale is defined as transfer for a
price. (Id. at 4.) Alden says it would be improper for the Court to read any language into the
contract that would call for a commission based on sales "profit", though she is herself
introducing the concept of sales "price," which does not appear in the agreement. (Id.) For its

part, Office Furniture Distributors argues that, under the circumstances, no reasonable juror could find that Alden was entitled to a commission factored on sales price. (Summary J. Mem. at 6.) Office Furniture Distributors makes a persuasive argument.

A promise to pay a percentage commission on sales does not necessarily amount to a promise to base a commission on sales price or on sales profit. Either approach could make sense, depending on the circumstances. Here, the contract promises to pay a 30% commission. In the context of a 30% commission rate, given the record presented at summary judgment, it becomes clear that the agreement does not promise a commission based on sales price. Office Furniture Distributors has introduced evidence that its gross profit margin on furniture sales is less than 30%. Alden, by all appearances, has failed to investigate whether this representation is accurate. She fails to offer any evidence at all about her sales market, her course of dealings, or the profit margins realized by her former employer. Insofar as the only finding this record permits is that Office Furniture Distributors did not even realize a 30% gross profit on Alden's sales, the jury could not reasonably find that the parties' agreement promised Alden a 30% commission based on sales price. The Court can take it as established that Office Furniture Distributors is not in the business of conducting sales for its employees' exclusive profit. Alden's request that "sales price" be read into the contract is manifestly unreasonable on the existing record. No juror of reasonable intellect could accept her proposed interpretation of the contract as effectuating the parties' intentions, at least not in the absence of different sales data.

This summary judgment conclusion of law is based squarely on Alden's failure to develop a factual record sufficient to permit a jury to regard as reasonable her proposed construction of the employment agreement. This does not mean that the "gross profit" calculations offered by Office Furniture Distributors are necessarily the only reasonable

calculations one could run, assuming one had access to the actual costs information.  Alden

rightly complains that Office Furniture Distributors might "manipulate its 'costs' in any manner

it chose."  (Opp'n Mem. at 4.)  Nevertheless, the problem with Alden's position is that, in

opposition to a summary judgment assertion that her commissions did not exceed her draws and

have always been calculated on the basis of gross profit, Alden has offered the Court,

*exclusively*, a counter-argument based on a construction of the agreement that is irrational in the

absence of significantly different facts.  Ultimately, the problem is not so much about ambiguity

as it is about Alden's failure to appreciate that her proposed construction of the contract must

make sense in the context of *facts*.  Alden's failure to develop a factual presentation in support of

her proposed reading amounts to a failure to generate a genuine issue of material fact.

Consequently, I recommend that the Court grant summary judgment in favor of Office Furniture

Distributors on count I.

**B.      Count II:  Sales Representative Commission Contracts**

Maine has enacted a statutory scheme designed to protect sales representatives who work

under commission contracts on behalf of certain non-resident companies, described as

"principals."  Pursuant to that scheme, "if a contract between a sales representative and a

principal is terminated, the principal shall pay to the sales representative all commissions accrued

under the contract within 30 days after the effective date of that termination."  10 M.R.S. § 1343.

Failure to comply with this provision exposes the principal to civil liability "for exemplary

damages in an amount that does not exceed 3 times the amount of commissions due the sales

representative, plus reasonable attorney's fees and costs."  Id. § 1344(1).[6]

---

[6]      The statute includes a pitfall for sales representatives if their actions are found frivolous.  In that situation,
"the sales representative is liable to the principal for attorney's fees actually and reasonably incurred by the principal
in defending the action and court costs."  10 M.R.S. § 1344(2).

Office Furniture Distributors argues that it has no liability under this statute because it does not fall within the statutory definition of "principal." (Summary J. Mem. at 5-6.) That definition requires that the employer be "a person, partnership, corporation or other business entity that does not have a permanent or fixed place of business in this State." 10 M.R.S. § 1341 (2)(A-C). The targeted summary judgment motion addresses that portion of the statute dealing with whether Office Furniture Distributors of New England is a corporation with a permanent or fixed place of business in Maine.

Practically speaking, count II is dependent on count I, for there can be no liability under the statutory scheme unless Office Furniture Distributors failed to timely pay Alden commissions that were owed to her. On the question of whether she is entitled to any commission payment, Alden has failed to introduce evidence of a genuine issue of material fact. Consequently, count II falls with count I.

Should the Court disagree with that assessment, the question is whether the fixed office space on Water Street in Augusta is kept by Office Furniture Distributors or by some other entity. In addition to the facts outlined previously, Office Furniture Distributors has introduced a lease for the premises in connection with its reply statement. The lease was signed by Joseph Danizio, who is variously described as a principal/owner of Office Furniture Distributors of New England, Inc. and "Union Office Interiors." Mr. Danizio signed the lease on behalf of "Union Office." (Danizio Decl. Ex. 2, Doc. No. 37-3.) This exhibit is, technically, outside of the record because it never found its way into any statement of material fact.

It is difficult to understand who else maintains the premises and operates out of the building if not Office Furniture Distributors. However, it appears to be possible that Transco Union Office Solutions persists as a business entity, although its former principal now appears to

be working for Office Furniture Distributors.  Whichever entity occupies the premises, it would appear to be an entity that is, at the very least, integrated with Office Furniture Distributors.  The landlord might well be able to sue Office Furniture Distributors on the lease, given the level of business integration demonstrated in this record.  On the other hand, a landlord attempting to collect unpaid rent for the leased premises might be directed to some other entity.

Based on my research, there is only one reported case in which a Maine court has discussed this statutory scheme.  In that case, Magistrate Judge Cohen of this Court suggested, by way of dicta, that opening a local office staffed with salaried salespeople is consistent with the statutory requirement of a "fixed" place of business.  Innovative Network Solutions, Inc. v. Onestar Commc'ns, LLC, 283 F. Supp. 2d 295, 302 (D. Me. 2003).  While I agree with that conclusion, it begs the question in terms of the resolution of this motion.  The issue in this case is whether or not the local office was opened or is maintained by the corporation known as Office Furniture Distributors of New England, Inc.

On balance, because Office Furniture Distributors is not licensed to conduct business in Maine and because the lease is not clearly in its corporate name, it might well prove appropriate to permit a jury to decide whether or not it is a "principal" under the statute.  However, because Alden has failed to generate a genuine issue in support of her claim for unpaid commissions, the question is moot.  Without unpaid commissions she cannot maintain a claim for exemplary damages under the statute.

**C.      Defamation**

Under Maine law, in order to prove defamation, Alden must show:  (1) a false and defamatory statement concerning another;  (2) an unprivileged publication to a third party;  (3) fault amounting to at least negligence on the part of the publisher;  and (4) either actionability of

the statement irrespective of special harm or the existence of special harm caused by the publication. Lester v. Powers, 596 A.2d 65, 69 (Me. 1991). Pursuant to Maine common law, defamatory "intra-corporate communications" made by a corporate agent about an employee will expose the corporation to liability for defamation even if the publication is kept "within the corporate community." Staples v. Bangor Hydro-Elec. Co., 629 A.2d 601, 603-604 (1993) (involving a supervisor's statements to the plaintiff's co-workers and the company's director of personnel).

The motion for summary judgment assumes that the allegedly defamatory statements are the statements made by Anne Tortorella to Dave Morosas that Alden misrepresented her whereabouts while on duty. (Summary J. Mem. at 8.) Alden does not say otherwise, but introduces the idea that Tortorella made additional defamatory statements to the Bureau of Employment Security. (Opp'n Mem. at 10.) The later statements need not be considered because they are absolutely privileged. 26 M.R.S. § 1047 ("All information transmitted to the bureau, the commission or its duly authorized representatives pursuant to this chapter is absolutely privileged and may not be made the subject matter or basis in any action of slander or libel in any court in this State."). According to Office Furniture Distributors, it is entitled to summary judgment because Tortorella's statements to Morosas were true, were not negligent, and were privileged. (Summary J. Mem. at 8-11.)

There is a genuine issue of fact concerning the truth of Tortorella's statements to Morosas that Alden had misrepresented her whereabouts on occasion. Tortorella maintains that Alden told Tortorella that Alden was making sales visits to customers at a time when, according to a private investigator, Alden was actually at her home, the gym, or another location. Alden, however, swears that she never misrepresented her location to Tortorella. Because Tortorella

told Morosas that Alden had misrepresented Alden's location, Alden's testimony, if believed, would permit a jury to conclude that Tortorella lied to Morosas. The testimony of the private investigator may corroborate Tortorella's account, but the facts still present a swearing contest between Alden and Tortorella about whether Alden misrepresented her whereabouts when she was supposed to be making sales visits to customers. The jury would be free to consider the additional fact that Tortorella's statement was made to Morosas in the wake of the understanding that Office Furniture Distributors would transfer the Maine General account from Tortorella to Alden. That additional fact is not essential to a finding of defamation, but is potentially a factor that the jury could consider in evaluating whether Tortorella or Alden is testifying falsely concerning Alden's representations about her whereabouts on the date in question.[7]

Because Tortorella had authority to terminate Alden's employment, it can be presumed that she had sufficient authority to subject Office Furniture Distributors to respondeat superior liability under the Staples reading of the common law. The remaining issue is whether the communication between Tortorella and Morosas was privileged. An employer has a conditional privilege when it comes to talking about the performance of employees. Id. at 604. However, that privilege is lost if abused. Id. Abuse of the privilege can be demonstrated where, as here, the record invites a finding that the employer's agent knew her statement was false or acted entirely out of ill will. Id. Because the record presents a genuine issue of material fact on the elements of the defamation claim, the Court should deny the motion for summary judgment on count III.

---

[7] If false, the statement was slanderous per se because it related to Alden's fitness for her occupation. Saunders v. VanPelt, 497 A.2d 1121, 1124-25 (Me. 1985). The defamatory quality of the representations is apparent from the fact that it was cause for Alden's termination.

**Conclusion**

Based upon the foregoing, I recommend that the court grant the defendant's motion for summary judgment as to counts I and II and deny the motion as to count III.

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

July 19, 2011